IN THE UNITED STATES DISTRICT COURT 1:08CV0561
FOR THE SOUTHERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SEP 25 2008
DAVID J. MALAND, CLERK
BY
DEPUTY

UNKNOWN NAMED RICHARD P. LEBLANC UNIT INMATES OF THE TEX-DEPT.CRIM-JUSTICE-CORRECTIONAL INST. DIV., INMATE GARDNER, INMATE GOMEZ, INMATE FORTENBERRY, INMATE PAYNE, INMATE HERNANDEZ, INMATE MOORE, INMATE RAMIREZ, INMATE CARR, INMATE COBB, INMATE WHITE, INMATE SURRELLS, INMATE GARRET, INMATE QUIROGA, INMATE BOUS AND ALL THOSE SIMILARLY SITUATED INMATES NOT OTHERWISE NAMED,

PLAINTIFFS,

VERSUS

WARDEN ALFORD, RICHARD P. LEBLANC UNIT ADMIN., NATHANIEL QUARTERMAN

- ORIGINAL ACTION:
- FEDERAL CONSTITUTIONAL CLAIMS;
- FEDERAL STATUTORY CLAIMS;
- FEDERAL COMMON-LAW CLAIMS;
- SUPPLEMENTARY JURISDICTION:
- STATE CONSTITUTIONAL CLAIMS;
- STATE COMMON-LAW CLAIMS, AND
- STATE EQUITABLE AND STATUTORY CLAIMS.

CIVIL NO. ____________

*JURY TRIAL DEMANDED*

(TDCJ-CID DIRECTOR), MADELINE ORTIZ (REGIONAL DIRECTOR, TDCJ-CID), AND ANY DEFENDANTS' IMPOSED WITH DUTY TO ACT,

DEFENDANTS'.

# PLAINTIFFS' ORIGINAL COMPLAINT*

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES THE UNKNOWN NAMED RICHARD P. LEBLANC UNIT INMATES OF the TEX. DEPT. CRIM-JUSTICE-CORRECTIONS INSTIT. DIV., all INMATES SIMILARLY SITUATED NOT OTHERWISE NAMED, and all those named inmates named above, COMPLAINING OF the WARDEN OF the RICHARD P. LEBLANC UNIT (TDCJ-CID), the REGIONAL DIRECTOR (REGION I) OF TDCJ-CID, the DIRECTOR OF TDCJ-CID (NATHANIEL QUARTERMANN), AND

* This action SEEKS, in the alternative, RELIEF in a MANNER CONSISTENT WITH RULE 27 FEDERAL RULES OF CIVIL PROCEDURE (WEST 2008) that would allow plaintiff(s) a means to investigate the anticipated claims that govern the facts described herein.

all those defendants otherwise named, mentioned, or identified herein above for those specific reasons outlined below. The "plaintiffs" are in first chronological order, and "defendants" are the latter. This suit is taken before this Honorable Court with the following valid basis, predicate of authority, and foundation of facts.

## I. Jurisdiction of the Court

### 1.) Original Jurisdiction

this court has the original jurisdiction to consider, address, and entertain all federal constitutional, statutory, and common-law claims because they raise federal questions under existing federal law, pursuant to §§§ 1331 1334(a) and 1343(a), title 28 United States Code (Vernons 2008).

### 2.) Supplementary Jurisdiction

this Court, having jurisdiction over the federal claims above and as justified by the need to

take action, has jurisdiction to address, consider and entertain all state law claims (i.e., state constitutional, statutory, and common-law claims) that involve this controversy, pursuant to § 1367, Title 28, United States Code (Vernon's 2008).

## II. Venue

Venue is proper in the Beaumont Division, U.S. District Court, Southern District of Texas, because the events that gave rise to this action accrued in Jefferson County, Texas, and because the plaintiffs themselves reside in this County, including the fact that some of the defendants also live in such county.

## III. Parties to Action

1. Plaintiffs'

All the plaintiffs' legal residence is at the Richard LeBlanc Unit due to their incarceration. Their name and other information of the plaintiffs are indicated immediately below the "Conclusion" of

this document and pleading, in their order.[1]

2.) Defendants'

a.) The chief defendant involved in this action is defendant Warden Alford. He is sued in both his personal and official capacity. Defendant Alford's address is his place of employment, the Richard P. LeBlanc Unit, 3695 FM 3514, Beaumont, Texas 77705.

b.) Defendant Madeline Ortiz is the Regional Director for Region I, in which the LeBlanc Unit falls unit. She is also sued in her personal and official capacity. Her known employment address is, Region I, TEX. DEPT. CRIM. JUSTICE CORRECTIONS INST. DIV., POST OFFICE BOX 99, HUNTSVILLE, TEXAS 77342.

c.) Defendant Nathaniel Quarterman is the Director of the TEX. DEPT. CRIM. JUSTICE-CORRECTIONS INST. DIV. He is also sued in his personal and official capacity. Defendant Quartermann's address of employment is also P.O. BOX 99, HUNTSVILLE, TEXAS 77342.

---

[1] Due to the numerous plaintiffs' involved in this action and the fact that the effects of this hurricane is ongoing (e.g., health), plaintiffs' incorporate their names, information, hereon.

d.) The "any defendants' imposed with a duty to act" are unknown-unnamed defendants' in which would be personally and/or officially liable, in such capacities, for failing to act, refusing to act, or taking necessitated action under the circumstances of this case. These defendants' addresses are either the same of the preceeding defendants' or unknown at this time.

# IV. FACTS INVOLVED IN CONTROVERSY

The facts involving this action underline the Hurricane that Texas will never forget, known as Hurricane Ike, in which repeatedly was casted by the news media on all national news channels, from when it was around Puerto Rico; and it appeared to be headed towards Florida or New York. The relevant time frame would probably be from Tuesday, September 9th, 2008 because that is when the angle of Hurricane Ike became more and more evident that it was headed towards the State of Texas. In fact, as the media warned and informed us by communication and a very detailed visual radar screen, the Hurricane was "as long and large as the State of Texas;" "being 700 miles in length/width. The facts are coextensive and, due to

numerous plaintiffs involved in this action and controversy, the severity and impact the hurricane has caused, and the numerous isolated incidents, ongoing circumstances, and effects involved, the facts will be stated inasmuch as possible from the angle of the authoring plaintiff and the individual plaintiffs, as well.

Nearly 3-3½ weeks back, hurricane Gustav was feared to hit the Gulf, around the Port Arthur and Beaumont, Texas area, at least to the extent that a threat was present, necessitating an evacuation of all the inmates at the LeBlanc Unit. In fact, a mandatory evacuation order was issued. Half of the LeBlanc Unit was transferred to the Ellis Unit, in Huntsville, Texas, while the other half were taken to the Pollunsky Unit, respectively. The offender population was returned once the hurricane had travelled elsewhere, and it was safe for return, an estimated 3-3½ days later. Bus were sent and available at that experience, even though the media had reported the hurricane a very distance away the Beaumont-Port Arthur area; the media still presented concern to the public, as it continuously did during Hurricane Ike arrival in the Gulf coast.

Now, with respect to hurricane Ike, the news media gave a very impressive, remarkable, and level of

NewsCoverage, outlining projected angles of the
Hurricane, the strength, the anticipated and expected
arrival, and how immensely it had grown in
width (wide) and strength as it neared inland here
in Texas (from a catagory 1, 2, and 3). The
public media covered Hurricane Ike from when it
had long changed it then expected destination (Louisiana)
to and throughout all apparent and existing timeframes
appreciatable, and how this particular Hurricane had
made a "mysterious" course change. This particular news
came in, from the various, if not all, the plaintiffs involved
in this litigation, about and around Tuesday (09/09/08) or
late wednesday (09/10/08). Specifically, News Channels
as Channel 4 (NBC), Channel 6 (CBC), and Channel 12
(ABC) REPEATEDLY COVERED this NEWS COVERAGE as its
"covering story" (from begining coverage) — and outlined
how the hurricane "was headed" towards Galveston, TX.,
and was "as large as" to impact the Beaumont-Port
Arthur, Texas (and surrounding) areas) within Range.
In fact, Governor Perry himself gave way to officially
make way to the reaction of mandatorily evacuating all
surrounding areas (as mentioned above) when he declared
a "state-of-emergency" in 88 counties, which included
Jefferson County, Texas. Governor Perry gave a very

concerned, descriptive, and uproaring speech that totally affirmed how "serious" Hurricane Ike is and the threat it presents. Governor Perry (on about 09/11/08) even had a Metorologist of him own from the Fort Worth-Dallas (Texas) area that addressed where (the vicinity) the Hurricane was expected to strike, the threat, and, among many concerns, the uniqueness of "this particular" Hurricane and enormous, gigantic size. Defendant Alford knew, reasonably known, and was imputed, under his capacities, to know, with commonality, rationality, or with reasonable minds, that it was time, as early as 09/10/08, but no later than 09/12/08 by or around 5-6pm, to evacuate the inmates on the Leblanc Unit, but he failed to do so. Furthermore, these duties similarily extend to defendants' Ortiz and Quarterman because they not only are superior/supervisory over defendant Alford, but in situations as the underlining, they should have made, have taken, or went about to oversee that the safety, health, and well-being of these inmates are departed away from Hurricane Ike. Plaintiffs' understanding is that it was Warden Elizabeth Bond (who recently left the Leblanc Unit) that made the decision to immediately evacuate the plaintiffs with regard to Hurricane Gustav, not that of defendant Alford. An extensive inquiry has

been made about this, revealing such.[2]

AFTERMATH:

as troubling it was to have experienced such a serious, traumatizing, and scarey Near death and emotional/mental inflicting Hurricane (Ike) throughout the late night hours of Friday, September 12, 2008, and upto and throughout the early hours of Saturday, September 13th, 2008, many of these plaintiffs were expressing the inner and deep fears in various ways, some in freight, while others ran away from the shaking roof top and rumbling walls and windows. It is an unimaginable event that casted a lack of trust in the safety of these plaintiffs, an uncalculated figure of hurt, tears, and psychologically disrupted to the degree not to conform or comport with the norms in the absence of this unfortunate, involuntary experience. The power from the City of Beaumont was damaged and cut-off by about 2AM, due to hurricane Ike, thus leaving only power of the generators (No TV, limited lights, etc.). All the plaintiffs' (this being as of 09/13/08 at about 2AM) were under the belief that only the eletricity was the causing damage that was effected as a result of the hurricane's actions, among any visual and seperate damage such had caused to the "LeBlanc" Units building, property, and/or facility.

[2] These are relevant facts to be outlined in this original lawsuit. as such, an amended petition, if necessary, will outline very much more in detail. This satisfies the "short and concise" requirement of Fed. R. Civ. Pro. 8 (West 2008).

Plaintiffs, up until about Noonday of 09/15/2008 that being days from the commencement of the aftermath effects, believed the water of the faucet, shower, and toilet was usuable, safe, and of conditions in which can be characterized as 'humane' or 'legally satisfying conditions, as standardarized or described by the (federal) Environmental Protection agency, federal law, and state law. admittingly, these plaintiffs continued to shower, drank the water, and utilize the water supply of the city as any normal day. It wasn't until about/ around or about 09/15/2008, that were plaintiffs warned to "Do not" use such water because of its contaminatory effects, existence, and impact if we would continue using the water. Many, if not all, of the plaintiffs' instantaneously were rushed and dominated by the fear to the personal health and well-being, both short-term and years from this experience, as science has revealed, most recently in the death(s) of civilian(s) around the 09/11/2001 World Trade Center debris, causing health damage, without them even knowing until years later, after an autopsy revealed the same, among other scientific discoveries. although a nurse has been made available to these plaintiffs' in regard to health concerns, the unit staff have began supplying water to

page XII. (after 09/15/08)
the plaintiffs' in water bottles (not of the city line of supply), providing meals to us, it is not erasing of the reality of plaintiffs' left to remain on the unit, even though, as some staff have conveyed to some of the plaintiffs' there were means of transportation for evacuating plaintiffs' prior to Hurricane Ike's arrival, the fact some of these plaintiffs' have had digestive troubles, as well as an uncontrolable amount of mental affliction, makes matters worse, despite the fact these plaintiffs' are parole granted and each have a released date affixed by the parole board, not no longer being a risk to public/society. Now plaintiffs' (statistically about 75% of them) have not showered in days, since the posted information of refraining use of water of faucet, etc (city supply). This would not be had an evacuation would have been followed (as warned by the media, governors office, and city officials around all the surrounding counties of Beaumont, Texas (e.g. Port Arthur, TX., Sabine Pass, etc.). Interestingly, defendant Alford, including the remaining two defendants' have not at least provided a written and/or oral message on an explaination as to "why" an evacuation didn't occur or of what to expect of the days, weeks, months on the LeBlanc

unit (e.g., administrative goals/plans, and what ultimate intentions would be desired), or at the smallest simply attempt to do the same. Rather, based upon several, but NOT all, staff members that have since came across all or some of these plaintiffs, the reason why "an evacuation did not happen was because this hurricane did not appear to be headed towards the direction/path it eventually had taken. In fact, if it wasn't for some of these compassionate staff/officials sympathy towards us, it is nearly impossible to ascertain how each of these plaintiffs' mind would be, especially psychologically. Defendants' inaction/action was taken, believeably, with reckless disregard and wanton conduct, although plaintiffs' do also believe such action/inaction amounted to an intentional reaction to have plaintiffs, "ride out" the threat(s), risk(s), and exposure(s) of Hurricane Ike, as various staff members have relayed to various plaintiffs'. Plaintiffs' really entrusted each of these defendants' to comply with the manditory evacuation order and to take immediate steps towards that goal, and protecting their health, physical being, and bodily integrity. Furthermore, plaintiffs' have been denied to

access to a television set or, alternatively, a radio, in order to afford plaintiffs' access to the crucially material and substantially important information that relates, and probably goes to the hallmark of gaining knowledge of the impact, outcome, and overall consequences of "Hurricane Ike," despite the fact that staff have brought cellphones and radios (against policy/Texas law) within the institution (non-ranking officials), and the fact that power (electricity) to afford that access is available; including extension cords, if necessary.[3] Plaintiffs' remain ignorant of fundamental information they deserve to know as human beings.

## V. Legal Claims Proportionally Identified

This lawsuit involves many arguable and believed claims that justify relief in the unfortunate circumstances and situation. They are, but not limited to, the following:

[3] Restated: as time passes, more and more facts will be unveiled and ripe for pleading. Also the lengthiness of facts of this story becomes significant in stating the specific outlines. Lastly, these party plaintiffs are pro se and lacking skill of law (by vast).

A. Federal Claims

1.) 8th amendment (united states Constitution) claims are:

a.) failure to protect; ✓

b.) injury to bodily integrity, which mental/emotional integrity (8th and 14th amendment);

c.) exposure to life-threatening, health damaging; ✓ emotional-psychologically destructive situation, and ✓

d.) cruel and usual infliction of punishment.

2.) 1st amendment claims (U.S. Const.) are:

a.) fundamental right to access to television (news media), especially in times of crisis, and

b.) immunities and rights that protect and secure access to outside media (including radio) when the sources are available, without government obstruction, denial, and/or implication.

---

✓ = denotes to include 5th and 14th amendment claims that affords relief under similar circumstance(s), not abandoning claims that exist under valid law.

3.) federal statute(s) violations:

a). compliance with congressional authority to take immediate, precautionary measures towards and for citizens and human beings as applicable under laws governed under national disaster(s) law(s) (e.g. laws that extend to individual states' in crisis of Hurricane threats, evacuation, and safety); and

b.) violations of pertinent agriculture and aquaculture laws designed to protect human beings and citizens of the United States under the United States agriculture code

4. State law claims are:

a.) article 1 § 3 and 1 § 3a, Texas constitution (Equal protection of the law);

b.) article 1, § 13 and § 19, Texas constitution (due course of law; cruel punishment forbidded);

c.) Chapter 96, Tex. Civ. Pract Rem. Code (false disparagement of perishable food product (extends

definitions to "agriculture" and "aquaculture");

d.) §79.002 (Hazardous materials) and §79.003 (Disasterous assistance), Tex. Civ. Pract. Rem. Code, provides liability for "intentional, wilful, reckless conduct" and "wanton conduct";

e.) gross Negligence under Texas Common law theories;[4]

f.) Negligence per se under Texas Common law theories (SEE footnote n.4)

g.) §321.003(b)-(d), Tex. Health & Safety Code (violating provisions regulating treatment of chemically dependent persons that harms cure in a chemical dependency or medical rehabilitation facility;

h.) §11.0841(b) Tex. Water Code, provides remedy to redress unauthorized diversion, impoundment, or use of surface water;

---

4 These claims provides remedy to redress duties emplaced and outlined under the state and federal statutes identified above that fails to afford a civil remedy to redress the civil wrongs done to plaintiffs'.

i.) possible violations of § 7.351(a), Tex. Water Code (exposure to radioactive materials);

j.) possible violations of Chapter 90 (definitions of 'asbestos related injury' - 'silica related injury, "mesothelioma" (abdominal issues) ) of the Tex. Civ. Pract. Rem. Code;

k.) Breach of fiduciary duty [5]

l.) assault by infliction of bodily and mental injury. (includes reckless conduct, among other levels of state of mind - Negligence) — ONI, INC. vs. Swift, 990 SW2d 500, 503 (Tex. App. - Austin 1999);

m.) assault - threat of bodily injury (extends liability to "knowingly" imposing threat (e.g., LaBesila vs. Charlie Thomas, Inc., 942 SW2d 127, 138 (Tex. App. - Amarillo 1997, writ denied), and

n.) intentional infliction of emotional distress; loss of companionship.

---

5 Please see footnote No. 4. These claims also afford additional remedies of breaches of duties owed.

## VI. Discussion of Applicability and Extraordinary Circumstances to Suspend or Toll Exhaustion of Remedies Under the law Requirement

This lawsuit presents very unique, exceptional, and troubling circumstances that arguably would exempt, suspend, or toll exhaustion of remedies requirements under federal law. These are:

a.) The LeBlanc Unit does not currently have, due to Hurricane Ike, any computers running but only sufficient to handle issues necessary for response towards progress and restoring activities on the unit (as indicated by staff, "things should be back to normal no later than a week or two.... upto 6 weeks");

b.) Various, if not 1/2 of the signing plaintiffs', will be released mathematically between days of today and December 1st, 2008 (about 72 days from this) — Step one can take upto 40 days for response and 30-35 days for Step 2, thus NOT

not insuring sufficient time to this lawsuit. It is possible the step 1 or step 2 officials request additional time to answer the allegations, which in turn could take upto 105 days total, well beyond the majority's release date; and

c.) within judicially and/or congressionally created / recognized exceptions to exhaustion of administrative remedies, these plaintiffs are being subjected to state governmental action that has impeded, frustrated, obstructed to redress a situation that could not possibly be remedied administratively, and, furthermore, due to excusable circumstances, they make remedy of this kind as remedy of "last resort".

## VII. Prayer for Relief

Wherefore, premises considered, plaintiffs do pray that, upon issuance of process, summons, and copy of lawsuit, defendants be subjected to a judgment that:

a.) awards compensatory damages within the jurisdictional maximums of this court;

b.) grants a declaratory judgment declaring omission(s) / action(s) as violating such law(s) specified herein;

c.) awards punitive / exemplary damages for callous disregard, intentional, wilful omission(s) / action(s) that subjected these plaintiffs' to damages and wrongs;

d.) an injunction that prevents future plaintiffs from (or inmates classified at the LeBlanc Unit) being subjected to what the underlining plaintiffs' experienced by Hurricane Ike;

e.) awards costs, fees, and attorney(s) / paralegal(s) fees that may eventually exist to prosecute this lawsuit, and

f.) relief in which plaintiffs would be entitled to at law or in equity.

Plaintiffs' pray, furthermore, in the alternative, that this Court will grant his alternative Fed. R. Civ. Pro. 27 petition to perpetuate testimony or investigate claims in anticipated litigation. Plaintiffs' pray for such other relief

Page 22

in which the law or principles of Equity.

Respectfully Submitted,

all the plaintiffs, by their signature below, do solemny swear, state, verify, and declare that all of the foregoing information is true and correct based upon their own, acquainted, recollected, and personal knowledge pursuant to Title 28, United States Code, § 1746 (West 2008).

Signed on this 19th day of September, 2008.

Exhibit "A"
(09/15/08 "Notice" posted by)
(Lewis unit administratives)
(Official)

Gomez David

NAME: Gomez David
Tdcj-Cid NO. 1476016
Address: Richard P. LeBlanc Unit, Tex. Dept. Crim. Justice-Corrections Inst. Div., 3695 FM 3514, Beaumont, Texas 77705

Chad M. Giosio

NAME: Chad Giosio
Tdcj-Cid NO. 1274142
Address: Richard P. LeBlanc Unit, Tex. Dept. Crim.-Justice Corrections Inst. Div. 3695 FM 3514 Beaumont, Texas 77705

Carlos Ortega

NAME: ORTEGA, CARLOS
Tdcj-Cid NO. 1092707
Address: Same as above

Donald Ray Fortenberry

NAME: Donald Ray Fortenberry
Tdcj-Cid NO. 1431092
Address: Same as Above

Brian K. Moore

NAME: Brian K. Moore
Tdcj-Cid NO. 1490012
Address: Same as above

Darrell H. Osborne

NAME: Darrell H. Osborne
Tdcj-Cid NO. 363591
Address: Same as above

Marvin Joe H

NAME: Joe Henry Marvin
Tdcj-Cid NO 1343645
Same as above (address)

Davis Demetris S Sr.

NAME: Davis, Demetris S SR.
Tdcj-Cid: 1401123
Address: Same as above

George Quiroga

NAME: George Quiroga
Tdcj-Cid NO. 1491097
Address: Same as above

Charles Alton Perry

NAME: Charles Alton Perry
Tdcj-Cid NO. 1468948
Address: Same as above

page 24

[redacted]

Name: [redacted]

TDCJ-CID NO. [redacted]

ADDRESS: SAME AS ABOVE

Samuel House

NAME: Samuel House

TDCJ-CID NO. 1413615

ADDRESS: SAME AS ABOVE

[redacted]

NAME: [redacted]

TDCJ-CID NO. [redacted]

ADDRESS: SAME AS ABOVE

Danny Morrow

NAME: DANNY MORROW

TDCJ-CID NO. 1124027

ADDRESS: SAME AS ABOVE

NAME Quinton Washington

TDCJ-CID NO. 1474379

ADDRESS: SAME AS ABOVE

Vernon Fletcher

NAME: VERNON FLETCHER

TDCJ-CID NO. 1240013

ADDRESS: SAME AS ABOVE

[redacted]

NAME: [redacted]

TDCJ-CID NO. [redacted]

ADDRESS: SAME AS ABOVE

[redacted]

Name: [redacted]

TDCJ-CID NO. [redacted]

ADDRESS: SAME AS ABOVE

Pedro Joe Ramirez

NAME: Pedro Joe Ramirez

TDCJ-CID NO. 782291

ADDRESS: SAME AS ABOVE

John Anthony Sanchez

NAME: John Anthony Sanchez

TDCJ-CID NO. 1014657

ADDRESS: SAME AS ABOVE

Albert Castro

NAME: Albert Castro

TDCJ-CID NO. 1344143

ADDRESS: SAME AS ABOVE

Augustus Ray Cobb

NAME: Augustus Ray Cobb

TDCJ-CID NO. 655213

ADDRESS: SAME AS ABOVE

David Hernandez

NAME: David Hernandez

TDCJ-CID NO. 1196412

ADDRESS: SAME AS ABOVE

NAME:

TDCJ-CID NO.

ADDRESS: SAME AS ABOVE

Page 25

Lawrence Ray Gillispie Jr
NAME: Lawrence Ray Gillispie Jr
TDCJ-CID NO. 1477662
ADDRESS: SAME AS ABOVE

David Garrett
NAME: DAVID GARRETT
TDCJ-CID NO. 1442430
ADDRESS: SAME AS ABOVE

Donald Ray Fortenberry
NAME: Donald Ray Fortenberry
TDCJ-CID NO. 1431092
ADDRESS: SAME AS ABOVE
Home
823 Kimwood, Dallas, TX. 75232

NAME:
TDCJ-CID NO.
ADDRESS: SAME AS ABOVE

NAME: Mckenzie Mack
ADDRESS: SAME AS ABOVE
TDCJ-CID NO. 869078

Alpha Tippens Jr
NAME: Alpha Tippens Jr
ADDRESS: SAME AS ABOVE
TDCJ-CID NO. 830342

Antonio Payne
NAME: ANTONIO PAYNE
TDCJ-CID NO. 855848
ADDRESS: SAME AS ABOVE

Alpha Tippens Jr.
NAME: Jason L. Thomas
TDCJ-CID NO. 1364878
ADDRESS: SAME AS ABOVE

Anthony Ray Gardner
NAME: Anthony Ray Gardner
TDCJ-CID NO. 1418162
ADDRESS: SAME AS ABOVE

Carlos Soto
NAME: CARLOS SOTO
TDCJ-CID NO. 592266
ADDRESS: SAME AS ABOVE

Charles Sorrells
NAME: Charles Sorrells
TDCJ-CID NO. 1474903
ADDRESS: SAME AS ABOVE

David Castillo
NAME: David Castillo
TDCJ-CID NO. 1340162
ADDRESS: SAME AS ABOVE

**Texas Department of Criminal Justice**
**Correctional Institutions Division**
**Inter-Office Communications**

**To:** LeBlanc Unit Offender Population **Date:** September 15, 2008

**From:** Captain K. Gorsuch
Richard P. LeBlanc Unit **Subject:** Drinking Water

The LeBlanc Unit is currently under a boil water notice from the City of Beaumont, Texas. **DO NOT DRINK TAP OR FAUCET WATER. FAUCET WATER MAY BE USED TO BRUSH YOUR TEETH PROVIDED YOU DO NOT SWALLOW THE WATER.** Therefore, the agency has provided the facility with drinking water from outside sources which are safe for us to consume. Drinking water will be provided in coolers on each pod up to 68 gallons a day maximum. This means that each offender is allowed and encouraged to drink up to 1 gallon of water a day. The consumption of up to one gallon of water will help each offender replace any fluids which may be lost by their body due to the heat.

Once again, each offender will be allowed to consume up to (1) gallon of water per day. Offenders will be allowed to fill any empty containers they have such as peanut butter jars and water bottles with which they can drink from. However, once our current situation is resolved, the offender population is required to dispose of those containers.

Cc:file

Exhibit "A"